392 A.2d 798

**COMMONWEALTH of Pennsylvania**

v.

**Frederick Robert FREY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 9, 1977.

Decided Oct. 20, 1978.

John Rogers Carroll, Philadelphia, for appellant.

Joseph M. Dougherty, III, Assistant District Attorney, Springfield, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

The single issue which appellant raises in this appeal is whether Delaware County had venue-jurisdiction to try charges of possession of a stolen auto, possession of an auto with a defaced serial number, and sale of such an auto, where the theft occurred in another state, and appellant and the ultimate purchaser of the car lived outside Delaware County. Appellant argues that the only connection this alleged crime had with Delaware County was that the signatures on the Assignment of Certificate of Title from himself to a Nancy Thorington were notarized by a Delaware County notary, which appellant contends was insufficient, standing alone, to give that county jurisdiction. We are persuaded by appellant's arguments and reverse his conviction.

The facts are as follows. On April 24, 1972, a 1967 Corvette automobile was stolen from the parking lot of the Tri-State Mall in the State of Delaware. This automobile, bearing the serial number 194677S118930, was registered to Lawrence G. Strohm. In a separate incident several months later, in June of 1972, Paul DiMaio, owner of a 1966 Corvette recently titled in Pennsylvania, serial number 194676S118913 was involved in an accident which resulted in extensive damage to his vehicle. Mike Tirpak, owner of an auto body shop, purchased DiMaio's wrecked auto. Tirpak stripped the vehicle, selling or using the various parts. The bent frame and sub-frame were sold in October of 1972 to Joseph Heyne, a teacher of auto repair at a vocational school

for $75.00. Heyne sold this frame and sub-frame to appellant, Frederick Frey, transferring title to Darlene Frey, appellant's wife at the time. The title to this vehicle correctly listed the identification number as 194676S118913, the serial number of DiMaio's wrecked 1966 Corvette. At the time of the transfer, Heyne was a resident of Norristown, Montgomery County. Appellant and his ex-wife were residents of West Chester, Chester County.

Appellant testified that he is a professional auto race driver and that he frequently builds or repairs old Corvettes using parts he has purchased. When appellant bought the frame and sub-frame from Heyne, appellant then asked Heyne to use that frame to build a reconstructed 1967 Corvette. Appellant supplied Heyne with the "body"[1] for the vehicle, allegedly taken from Lawrence Strohm's stolen 1967 Corvette. After Heyne completed the work, Darlene Frey, appellant's wife, took title as indicated above to the now completed vehicle, which was listed on the document of title by serial number 194676S118913. In June of 1974, Darlene Frey transferred the title to this particular vehicle to appellant. Appellant later transferred title for this vehicle to Nancy Thorington, a resident of Montgomery County at the time of the sale.

The lower court decided that it had jurisdiction of this case because the document of title, transferring title from appellant to Thorington, was notarized by M. A. Sculley of Newtown Square, Delaware County, Pennsylvania. The lower court therefor found that "[T]he logical conclusion of these facts and the permissible inferences to be drawn from them is that both Miss Thorington and [the appellant] proceeded to the auto tag office in Newtown Square where the transfer was notarized." We hold that the lower court erred by assuming jurisdiction based on the above inference.

1. The body portion of the vehicle is all the remaining metal structure, less the frame and sub-frame.

According to statutory law, a notary may exercise his power outside his county of residence.[2]  When a notary public does certify a document, he attests that the document has been executed or is about to be executed, that the notary knows that he is confronted by the signer, and that the signer is asserting the fact of his execution.  *In re Bokey's Estate,* 412 Pa. 244, 252, 194 A.2d 194 (1963).  Notarization certifies the fact of execution by a person who purports to be the signer but not any fact beyond that, such as the place of notarization.  As this court has said,

> "[A] notary's certificate shall be read and received in all suits in evidence of the *facts* therein certified;  not of *facts* not certified but attempted to be inferred from those facts.  *Bell v. Anderson,* 143 Pa.Super. 56, 66, 17 A.2d 647, 651 (1941).  (Emphasis in the original.)

This rationale applies with equal force to the case now at bar.

The place of notarization is not a certified fact nor is it inferable from any certified fact.  Though a notary is required to indicate the political subdivision and the county in which he maintains his office,[3] this is not an attestation of the place of notarization.

The Commonwealth cites *Commonwealth v. Lawrence,* 282 Pa. 128, 127 A. 465 (1925) for the proposition that "[i]n the absence of uncontradicted evidence to the contrary, the conviction is conclusive the crime was committed where it was charged to have been done in the indictment, for the verdict includes such a finding."  *Commonwealth v. Lawrence,* 282 Pa. at 133, 127 A. at 467.  The Commonwealth asserts that no evidence was introduced which disputed the Commonwealth's claim that the crimes charged did occur in Delaware County.  But this assertion overlooks the fact that the Commonwealth's own evidence proved that both appel-

---

**2.** The Act of August 21, 1953, P.L. 1323, § 2, 57 P.S. § 148 (1969), wherein the legislature delineated the jurisdiction of notaries as "co-extensive with the boundaries of the Commonwealth, irrespective of their place of residence within the Commonwealth."

**3.** The Act of August 21, 1953, P.L. 1323, § 13, 57 P.S. § 159.

lant and the person to whom he sold the car resided outside of Delaware County. Furthermore, all other parties who were said to have held and transferred title to either vehicle were not residents of Delaware County. Additionally, it is undisputed that the actual theft of Strohm's vehicle occurred out-of-state. In view of the above facts, appellant's trial counsel made timely objection in the form of a demurrer, challenging the venue-jurisdiction of the court. Where an accused has raised a substantial challenge to the venue-jurisdiction of the court below, a verdict is not conclusive on this issue. *Commonwealth v. Voci,* 393 Pa. 404, 143 A.2d 652 (1958).

The lower court relied heavily on Miss Thorington's statement that she and appellant went to the "auto tag place" together. However, Miss Thorington's testimony fails to disclose where the "auto tag place" was located. While it is true that the notary's office address appeared under her seal as being Newtown Square, Delaware County, this does not justify a finding that appellant and Miss Thorington necessarily went to the Newtown Square office to conduct the notarization. Given the fact that a notary public may operate outside of his county of residence, one can only speculate whether appellant and Thorington went to an "auto tag place" in Newtown Square, Delaware County, or to an "auto tag place" in West Chester County, or somewhere else in Pennsylvania. The evidence produced by the Commonwealth does not settle this issue or even allow a reasoned inference. Because speculation could not be avoided, the lower court erred by allowing this issue to go to the jury.

Accordingly, the judgment of sentence of the court below is hereby reversed.

PRICE, J., files a dissenting statement in which VAN der VOORT, J., joins.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

PRICE, Judge, dissenting.

I would affirm on the able opinion of the lower court.

VAN der VOORT, J., joins in this dissenting statement.