Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/07/2016 12:09 PM CDT

STATE OF NEBRASKA, APPELLEE, V.
RYAN M. LAFLIN, APPELLANT.
___ N.W.2d ___

Filed March 22, 2016.    No. A-15-505.

1. **Criminal Law: Trial.** In criminal prosecutions, the withdrawal of a rest in a trial on the merits is within the discretion of the trial court.
2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
3. **Trial: Proof: Courts.** Withdrawal of rest to fill in gaps in proof is proper, as long as the court does not advocate for or advise the State to withdraw its rest.
4. **Trial: Proof: Evidence: Courts.** Where the trial court alerts the State to an absence of proof and invites the State to withdraw its rest in order to present additional evidence, the trial court has abused its discretion and abandoned its role as a neutral fact finder.
5. **Venue: Proof.** The State must prove proper venue beyond a reasonable doubt in criminal cases.
6. **Judgments: Trial: Evidence: Proof: Appeal and Error.** In a bench trial of a law action, including a criminal case tried without a jury, erroneous admission of evidence is not reversible error if other relevant evidence, admitted without objection or properly admitted over objection, sustains the trial court's factual findings necessary for the judgment or decision reviewed.
7. **Venue: Proof.** Evidence that a defendant is arrested by police officers employed by a particular city and at an intersection of certain streets is insufficient proof of venue.
8. **Courts: Appeal and Error.** Unpublished decisions of the Nebraska Court of Appeals do not carry precedential weight.
9. **Motions to Suppress: Trial: Pretrial Procedure: Appeal and Error.** When a motion to suppress is denied pretrial and again during trial on

renewed objection, an appellate court considers all the evidence, both from the trial and from the hearings on the motion to suppress.

10. **Double Jeopardy: Evidence: New Trial: Appeal and Error.** Upon a finding of reversible error, the Double Jeopardy Clause does not forbid a retrial so long as the sum of the evidence admitted by a trial court would have been sufficient to sustain a guilty verdict.

11. **Evidence: New Trial: Appeal and Error.** When considering the sufficiency of the evidence in determining whether to remand for a new trial or to dismiss, an appellate court must consider all the evidence presented by the State and admitted by the trial court irrespective of the correctness of that admission.

12. **Appeal and Error.** An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.

13. **Constitutional Law: Search and Seizure.** The Fourth Amendment guarantees the right to be free of unreasonable searches and seizures.

14. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, the appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that the appellate court reviews independently of the trial court's determination.

15. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure.** A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through noncoercive questioning and does not involve any restraint of the liberty of the citizen.

Appeal from the District Court for Gage County, Paul W. Korslund, Judge, on appeal thereto from the County Court for Gage County, Steven B. Timm, Judge. Judgment of District Court reversed, and cause remanded with directions.

Lee Timan and Kyle Manley, of Clark & Timan, P.C., for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

Irwin, Pirtle, and Riedmann, Judges.

Irwin, Judge.

## I. INTRODUCTION

Ryan M. Laflin appeals his conviction for first-offense driving during revocation. On appeal, Laflin argues that the trial court abused its discretion by bringing the insufficiency of the evidence demonstrating venue to the State's attention and inviting the State to withdraw its rest in order to present additional evidence. Additionally, Laflin argues that the arresting sergeant's testimony should have been suppressed as a result of an unlawful seizure.

Upon our review, we find that the trial court abused its discretion by bringing the insufficiency of the evidence to the State's attention and permitting the State to withdraw its rest. We further conclude that the remaining evidence is insufficient to sustain Laflin's conviction. Accordingly, we reverse, and remand.

## II. BACKGROUND

Laflin was charged in the county court for Gage County with driving during revocation, first offense. Before trial, Laflin filed a motion to suppress. In the motion, Laflin argued that he had been unlawfully seized by police and that as a result, the statements and evidence obtained subsequently to his arrest should be suppressed. The court held a hearing on the motion to suppress.

At the suppression hearing, Sgt. Brian Carver of the Beatrice Police Department testified that on October 18, 2014, he was parked "just north of Court Street on 4th Street" in Gage County, writing a parking ticket, when he observed a blue pickup truck drive by and park one car in front of him. Sergeant Carver testified that he knew the blue truck belonged to Laflin. Sergeant Carver testified that he was familiar with Laflin from prior contacts and knew that Laflin's license was on suspended status during the preceding weeks. Sergeant Carver had not confirmed the status of Laflin's license on October 18 when he saw the truck drive past him. Sergeant

Carver testified that he observed Laflin to be the driver of the blue truck and that after Laflin had parked and exited the vehicle, Sergeant Carver approached him on foot. According to Sergeant Carver, he did not activate his patrol car's overhead lights or place Laflin under arrest, but, rather, asked to see Laflin's driver's license. Sergeant Carver testified that Laflin was defensive and asked how Sergeant Carver knew his identity. Sergeant Carver replied that he knew the man was Laflin and that he believed Laflin's license was suspended. Laflin produced a state identification card, but not a driver's license. Sergeant Carver testified that he confirmed with police dispatch that Laflin did not have a valid driver's license and then arrested Laflin. The county court denied the motion to suppress, holding that Laflin had not been seized during his interaction with Sergeant Carver, because the encounter was a tier-one citizen-police encounter.

A bench trial was held before the county court on February 10, 2015. At the trial, the State again presented the testimony of Sergeant Carver. Laflin objected to Sergeant Carver's testimony on the same basis as his motion to suppress. The trial court overruled Laflin's objection and allowed Sergeant Carver to testify. Sergeant Carver testified in accordance with his prior testimony at the suppression hearing that he had arrested Laflin on October 18, 2014, after observing him driving a blue truck and after speaking with him. Sergeant Carver stated that he was "parked in the 100 block of North 4th Street writing a parking ticket" when he observed Laflin driving. However, unlike the suppression hearing, the State never asked Sergeant Carver what city or county he was in when he made contact with Laflin. Lastly, the State introduced into evidence a certified copy of Laflin's driving record indicating that Laflin's license was revoked at the time of his arrest. The State then rested its case.

Following the State's rest, Laflin indicated he did not wish to present any evidence. The State waived its closing argument, and Laflin's attorney made a brief closing argument.

The court then stated it was satisfied that Laflin had driven at a time when his license was revoked. The court said, however, that it did not recall any evidence of venue being presented and asked the State whether it had proven venue. The State argued it had presented evidence of venue because Sergeant Carver had testified that he was in the 100 block of North 4th Street when he observed Laflin driving. The court reviewed the record and determined that there was insufficient evidence of venue because Sergeant Carver had not testified to which city or county he was in when he saw Laflin driving. The court then asked the State whether it wished to withdraw its rest and present additional evidence of venue. The State responded that it did. Laflin objected. The court permitted the State to withdraw its rest and recall Sergeant Carver. After being recalled, Sergeant Carver testified that the events to which he had previously testified occurred in Beatrice, Gage County, Nebraska.

The county court found Laflin guilty of first-offense driving during revocation and sentenced him to 60 days in jail with credit for 9 days already served.

Laflin appealed to the district court, arguing that the county court erred in overruling his motion to suppress, allowing Sergeant Carver to testify at trial, allowing the State to reopen the factual record, finding Laflin guilty beyond a reasonable doubt, and imposing an excessive sentence. We surmise from the district court's order that Laflin argued the trial judge abused his discretion by initiating the dialog with the State about venue. Following a hearing on Laflin's appeal, the district court affirmed the county court's conviction and sentence. The district court determined that the county court had properly classified Sergeant Carver's interaction with Laflin as a noncoercive police-citizen encounter, meaning Fourth Amendment protections did not apply. The district court also held that the county court had not abused its discretion in allowing the State to withdraw its rest and present additional evidence, but found that even without the additional

evidence, the record was sufficient to support a finding of venue. Finally, the district court determined that Laflin had not received an excessive sentence.

Laflin appeals from the district court's order upholding his conviction.

## III. ASSIGNMENTS OF ERROR

Laflin assigns numerous errors on appeal. Restated and renumbered, his assigned errors are that (1) the trial court erred in bringing the insufficiency of the evidence regarding venue to the State's attention and inviting the State to withdraw its rest in order to present additional evidence, (2) there was insufficient evidence of venue submitted, and (3) the trial court erred in failing to suppress Sergeant Carver's testimony as a result of an unlawful seizure.

## IV. ANALYSIS

### 1. Withdrawal of State's Rest

Laflin argues that the trial court erred when it brought the insufficiency of the evidence regarding venue to the State's attention and invited the State to withdraw its rest in order to present additional evidence. Laflin argues that the trial court abandoned its role as a neutral fact finder when it brought the sufficiency of the evidence regarding venue to the State's attention and asked the State whether it wished to withdraw its rest. We agree that the trial court's actions constituted an abuse of discretion.

[1,2] In criminal prosecutions, the withdrawal of a rest in a trial on the merits is within the discretion of the trial court. *State v. Bol*, 288 Neb. 144, 846 N.W.2d 241 (2014). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Gray*, 8 Neb. App. 973, 606 N.W.2d 478 (2000), *overruled on other grounds, State v. Nelson*, 262 Neb. 896, 636 N.W.2d 620 (2001).

Nebraska courts have previously addressed when a trial court abuses its discretion in permitting the State to withdraw its rest in a criminal case. In *State v. Thomas*, 236 Neb. 84, 459 N.W.2d 204 (1990), *disapproved on other grounds, State v. Boslau*, 258 Neb. 39, 601 N.W.2d 769 (1999), the defendant was charged with failure to appear. After the State had rested, the defendant moved for a directed verdict, contending that the prosecution was barred by the statute of limitations. *Thomas, supra*. The State then moved to withdraw its rest to present evidence that the defendant fell within an exception to the statute of limitations for being a person fleeing from justice. *Id.* The trial court permitted the State to withdraw its rest. *Id.* The Supreme Court affirmed, finding no abuse of discretion. *Id.*

[3] In *Bol, supra*, the Supreme Court also affirmed the trial court's decision permitting the State to withdraw its rest and present additional evidence. The State realized after resting its case that it had forgotten to admit a stipulation that proved one of the charges. *Id.* The court stated that *Thomas* "makes it clear that withdrawal of rest to fill in gaps in proof is proper, as long as the court does not advocate for or advise the State to withdraw its rest." *Bol*, 288 Neb. at 153, 846 N.W.2d at 251. Because the State, rather than the trial court, had realized the lack of proof, the Supreme Court determined the trial court did not abdicate its role as a neutral fact finder and did not abuse its discretion in permitting the State to withdraw its rest to put on additional evidence. *Id.* Accord *State v. McKay*, 15 Neb. App. 169, 723 N.W.2d 644 (2006) (affirming trial court's decision to permit State to withdraw its rest because State was alerted to omission in proof by defendant's motion, not by court).

In contrast, in *State v. Gray*, 8 Neb. App. 973, 606 N.W.2d 478 (2000), we determined the court abused its discretion in allowing the State to withdraw its rest. The State presented evidence of the defendant's no contest pleas in prior cases for the purpose of enhancing the punishment for the

current charge. See *id.* After the State had rested and during a break in the proceedings, the trial judge sent a letter notifying both parties that he was concerned that the State had not demonstrated that the defendant had knowingly and intelligently waived his right to counsel in the prior pleas. *Id.* Subsequently, the court permitted the State to withdraw its rest and adduce additional evidence. *Id.* We determined that the court's actions were an abuse of discretion because by informing the State of the insufficiency of its evidence, the judge "departed from his role as neutral fact finder." *Id.* at 992, 606 N.W.2d at 495.

[4] Here, as in *Gray*, it was the court that alerted the State to the possible deficiency in proof. After both parties had rested, Laflin had given his closing argument, and the State had waived closing, the court questioned whether the State had presented sufficient evidence of venue. The State argued that it had, but the county court determined the State had not presented evidence of venue, because it had demonstrated only the street names where Laflin was stopped, not the city or county in which he was stopped. The court asked the State whether it wanted to withdraw its rest to present additional evidence, at which point the State asked to withdraw its rest. This case is therefore more aligned with *Gray*, where the trial court brought the issue of insufficient proof to the State's attention, rather than the other cases in which the State or the defendant raised the issue that required reopening the record. In so doing, the county court abandoned its role as a neutral fact finder. See *id.* We therefore conclude that it was an abuse of discretion for the county court to allow the State to withdraw its rest.

### 2. SUFFICIENCY OF EVIDENCE TO PROVE VENUE

Laflin argues that there was insufficient evidence to support his conviction because the State did not present enough evidence of venue absent the evidence improperly admitted

following the withdrawal of the State's rest. The evidence the State offered to prove venue was the arresting sergeant's affiliation with the Beatrice Police Department and the street names at which he apprehended Laflin. We agree that there was insufficient proof of venue.

[5] The State must prove proper venue beyond a reasonable doubt in criminal cases. See *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992).

[6] In a bench trial of a law action, including a criminal case tried without a jury, erroneous admission of evidence is not reversible error if other relevant evidence, admitted without objection or properly admitted over objection, sustains the trial court's factual findings necessary for the judgment or decision reviewed. *State v. Harms*, 263 Neb. 814, 643 N.W.2d 359 (2002), *modified on denial of rehearing*, 264 Neb. 654, 650 N.W.2d 481.

[7] The Nebraska Supreme Court has previously determined that evidence that a defendant is arrested by police officers employed by a particular city and at an intersection of certain streets is insufficient proof of venue. See *State v. Bouwens*, 167 Neb. 244, 92 N.W.2d 564 (1958). The *Bouwens* court noted that multiple cities often contain streets with the same name, meaning that a reference to street names alone does not demonstrate venue. The court also noted that police of one jurisdiction are sometimes permitted to make arrests outside the territorial limits of the city that employs them, so the fact that an officer is employed by a particular body also does not establish venue. *Id.* Accord *State v. Vejvoda*, 231 Neb. 668, 674, 438 N.W.2d 461, 467 (1989) (stating that testimony that Grand Island police officer observed defendant driving at "'7th and Vine Streets'" was insufficient proof of venue to support conviction for driving under influence in Hall County).

In the case before us, Sergeant Carver testified that he was employed by the Beatrice Police Department and had apprehended Laflin while writing parking tickets "in the 100 block

of North 4th Street." Per the rule set forth in *Vejvoda* and *Bouwens*, Sergeant Carver's employment with the Beatrice Police Department and the street names of the location of the arrest are insufficient to demonstrate venue. Importantly, the State did not ask Sergeant Carver what city or county he was in at the time he apprehended Laflin. This evidence is insufficient to establish venue.

[8] The State asks us to find a recent unpublished Court of Appeals case controlling. See *State v. Pittman*, No. A-14-520, 2015 WL 153812 (Neb. App. Jan. 13, 2015) (selected for posting to court Web site). Unpublished decisions of this court do not carry precedential weight. See *State v. James*, 6 Neb. App. 444, 573 N.W.2d 816 (1998), *disapproved on other grounds, State v. Carlson*, 260 Neb. 815, 619 N.W.2d 832 (2000). Furthermore, we find the facts in *Pittman* inapposite to the case at hand. We conclude that this case falls under the rule set forth by the published cases discussed above holding that street names of the location of the crime coupled with the arresting officer's employment with a given law enforcement body are insufficient to establish venue. See, *Vejvoda, supra*; *Bouwens, supra*.

Alternatively, the State argues that we should consider Sergeant Carver's testimony from the suppression hearing in finding that the State established venue at trial. At the suppression hearing, Sergeant Carver testified that he "was parked just north of Court Street on 4th Street writing a parking ticket" when he observed Laflin driving. The State then asked Sergeant Carver, "Is that location in Gage County, Nebraska?" to which Sergeant Carver replied, "Yes, it is." No information regarding the city or county where Laflin was arrested was adduced at trial.

[9] The State directs us to previous cases stating that when a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from the trial and from the hearings on the motion to suppress. *State v. Ball*, 271 Neb. 140, 710 N.W.2d

592 (2006). However, the cases employing this proposition have done so in order to determine the correctness of the ruling excluding or admitting evidence that was the subject of the suppression hearing, not to allow the State to meet its burden of proof at trial. See, e.g., *id.* See, also, *State v. Tyler*, 291 Neb. 920, 870 N.W.2d 119 (2015); *State v. Bromm*, 285 Neb. 193, 826 N.W.2d 270 (2013). The State asks us to read this rule in reverse and consider evidence admitted at the suppression hearing as evidence to prove an essential aspect of the crime that was otherwise absent at trial—namely, venue. The State does not direct us to any authority permitting us to invert and expand the stated rule in this way, and we decline to do so.

[10,11] Upon a finding of reversible error, the Double Jeopardy Clause does not forbid a retrial so long as the sum of the evidence admitted by a trial court would have been sufficient to sustain a guilty verdict. See *State v. Edwards*, 286 Neb. 404, 837 N.W.2d 81 (2013). When considering the sufficiency of the evidence in determining whether to remand for a new trial or to dismiss, an appellate court must consider all the evidence presented by the State and admitted by the trial court irrespective of the correctness of that admission. *State v. Delgado*, 269 Neb. 141, 690 N.W.2d 787 (2005). Here, after the State was permitted to withdraw its rest, Sergeant Carver testified that he observed Laflin driving and apprehended him in Beatrice, Gage County, Nebraska. This evidence is sufficient to demonstrate venue. As such, Laflin is not entitled to dismissal of the charges against him and can be retried on remand. See *id.*

### 3. MOTION TO SUPPRESS

[12] Although we find the foregoing analysis dispositive of this case on appeal, we nevertheless address Laflin's argument regarding his motion to suppress, because we believe it is an issue that is likely to recur during further proceedings. See *Edwards, supra*. Laflin argues that Sergeant Carver

unlawfully seized him, because Laflin did not consent to being detained, a reasonable person would not have felt free to terminate the encounter, and Sergeant Carver lacked reasonable suspicion when he approached Laflin regarding his license. Laflin argues that because his seizure violated the Fourth Amendment, the evidence flowing therefrom, including Sergeant Carver's testimony at trial, should have been suppressed. The interaction between Sergeant Carver and Laflin was not a seizure within the meaning of the Fourth Amendment. Laflin's assignment of error is therefore without merit.

[13,14] The Fourth Amendment guarantees the right to be free of unreasonable searches and seizures. *State v. Garcia*, 281 Neb. 1, 792 N.W.2d 882 (2011). In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Howell*, 284 Neb. 559, 822 N.W.2d 391 (2012). Regarding historical facts, the appellate court reviews the trial court's findings for clear error. *Id.* But whether those facts trigger or violate Fourth Amendment protections is a question of law that the appellate court reviews independently of the trial court's determination. *Id.*

[15] A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through noncoercive questioning and does not involve any restraint of the liberty of the citizen. *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015). For example, the Nebraska Supreme Court found a tier-one police-citizen encounter in *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991). In *Twohig*, officers responded to a car accident and found an abandoned car that had struck a power pole and ended up in a ditch. An officer determined that the vehicle belonged to a Michael Twohig. *Id.* A short while later, an officer observed a man limping along a street about 2 miles from the scene of the accident. *Id.* The officer stopped his cruiser and engaged in a conversation with the man. *Id.* The officer asked the man who he was and where

he had come from and learned the man was Twohig. *Id.* The Supreme Court determined that this initial encounter was not a stop within the meaning of the Fourth Amendment, because it occurred in a public place and involved noncoercive questions by the officer. *Id.* The court noted that the officer did not activate his vehicle's overhead lights or direct Twohig not to leave. *Id.*

We similarly found a first-tier police-citizen encounter in *State v. Hisey*, 15 Neb. App. 100, 723 N.W.2d 99 (2006). In *Hisey*, an officer observed Richard Hisey drive by her patrol car and park in front of Hisey's house. The officer suspected that Hisey's license was still impounded, so she called dispatch and then pulled up next to Hisey before she confirmed the status of his license. *Id.* The officer asked Hisey if he had his license back. *Id.* The officer did not activate the emergency lights on her patrol car. *Id.* Hisey indicated he had his license back, but shortly thereafter, dispatch called the officer back and confirmed that Hisey's license was still impounded. *Id.* We determined that the initial encounter was a tier-one police-citizen encounter, because the officer was not intense or threatening and a reasonable person in Hisey's position would have felt free to leave. *Id.*

The initial encounter between Sergeant Carver and Laflin resembles those in *Twohig, supra*, and *Hisey, supra*. As did the police with respect to the defendants in *Twohig* and *Hisey*, Sergeant Carver approached Laflin in a public place and did not activate the lights on his patrol car. Additionally, Sergeant Carver approached Laflin on foot, rather than in his patrol car. Furthermore, Sergeant Carver engaged in conversation with Laflin and asked for his license, much like the officer in *Twohig* asked the man limping on the side of the road who he was and like the officer in *Hisey* asked whether Hisey had received his license back. Nothing about the encounter was threatening, and Sergeant Carver did not instruct Laflin not to leave. Cf. *Hisey, supra*. We conclude that the encounter between Sergeant Carver and Laflin was

a noncoercive, tier-one police-citizen encounter that did not trigger the protections of the Fourth Amendment. Because we conclude that Laflin was not seized within the meaning of the Fourth Amendment, we need not address Laflin's contention that Sergeant Carver lacked reasonable suspicion when he approached Laflin. Laflin's assignment of error is without merit.

## V. CONCLUSION

The trial court erred in allowing the State to withdraw its rest in order to present additional evidence of venue. Without considering this erroneously admitted evidence, there was insufficient proof of venue to sustain Laflin's conviction. We reverse the district court's decision and remand the matter with directions to reverse Laflin's conviction and sentence for first-offense driving during revocation and to remand the matter to the county court for a new trial.

REVERSED AND REMANDED WITH DIRECTIONS.